## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy No. 21 B 08585 |
| FLAVA WORKS, INC., ) | Chapter 11 |
| ) | Judge Donald R. Cassling |
| Debtor. ) | |

### ORDER DENYING IN PART MOTION TO DISMISS CHAPTER 11 CASE
### (DOCKET NO. 38)

This matter comes before the Court on the motion filed by creditor A4A Reseau, Inc. ("A4A"), to dismiss this Chapter 11 case. A4A sets forth four grounds upon which it seeks to dismiss the case filed by Flava Works, Inc. (the "Debtor") but only seeks to proceed on two of them: (1) the Chapter 11 case was not filed in good faith and (2) the Debtor is not eligible to file a bankruptcy case because it is a sole proprietorship. For the following reasons, the Court denies A4A's motion with respect to these two arguments.[1]

The Debtor filed a Chapter 11 petition on July 17, 2021, designating itself as an S-corporation and small business debtor under 11 U.S.C. § 101(51D).[2] (Dkt. No. 1.) Because the Debtor's original attorney passed away shortly after filing the petition, the Debtor was

---

[1] The other two grounds asserted by A4A for dismissal are: (1) the Debtor has no reasonable possibility of rehabilitation and (2) the Debtor is unable to effectuate substantial consummation of a confirmed plan. After A4A filed its motion, the Debtor filed a plan, followed by an amended plan. Both plans provide for payment of 100% of the claims of all creditors, including A4A. A4A points to the Debtor's Schedules and monthly operating reports to argue that the Debtor's revenue has steadily declined and that "[t]here is no indication that the [D]ebtor will have continued business operations sufficient to rehabilitate." (Mot. at p. 5.) In response, the Debtor argues that it was profitable before the Covid-19 pandemic, and that the pandemic was devastating to its business. Now that vaccines and Covid-19 protocols are in place, the Debtor expresses confidence that its profitability will return, that its most recent monthly operating report reflects that improvement, and that it will ultimately be able to fund its 100% plan. (Resp. at p. 2.) Because neither party requested an evidentiary hearing and the evidence available to it is conflicting, the Court deems it premature to address A4A's two remaining arguments regarding confirmability of the Debtor's amended plan. Indeed, A4A appeared to acknowledge as much in footnote 1 of its reply brief, when it stated that, "[w]ith respect to the possibility of rehabilitation, the [D]ebtor filed a Plan after the date of A4A's motion, and indicated at the hearing in this matter this morning that it intends to file an Amended Plan. A4A does not believe the Plan is viable but will wait to review the Amended Plan before deciding whether to object to it." (Reply at p. 2, n. 1.) Given the lack of an evidentiary hearing on A4A's motion, coupled with the conflicting evidence that currently exists on these issues, the Court deems these two arguments premature, and will not address these arguments until more evidence regarding confirmability of the amended plan is available.

[2] The Debtor describes its business as developing "content for several adult entertainment internet web sites which includes subscription to the web site, the producing and selling of videos and DVD's, [sic] and licensing content to third parties." (Dkt. No. 47 at ¶ 5.)

required to find new counsel. On August 17, 2021, the Court granted the Debtor's application to employ Robert J. Adams, Brian C. Pedersen, and Christine B. Adams of the law firm of Robert J. Adams & Associates. (Dkt. No. 21.) After the retention order was entered, the Debtor's counsel filed the required Schedules, Statement of Financial Affairs, and other required documents. (Dkt. Nos. 22, 23, 26, 33, 34, 36, 55, 56, & 76.) On September 14, 2021, the Court granted the Debtor's motion to redesignate the filing as a Chapter 11 case under Subchapter V of the Bankruptcy Code. (Dkt. No. 40.) The United States Trustee appointed Matthew Brash as the Subchapter V Trustee on September 15, 2021. (Dkt. No. 43.) The Debtor's decision to proceed under Subchapter V means both that the Debtor will receive helpful assistance from the Subchapter V Trustee and that this bankruptcy case will proceed on a more expeditious basis than it would under a regular Chapter 11 case.

A4A and the Debtor have been embroiled in protracted litigation over the Debtor's debt to A4A for over six years in federal court in Florida.[3] Two days prior to the filing of this case, Judge Joan A. Lenard of the United States District Court for the Southern District of Florida entered an order (the "Seizure Order") directing the United States Marshal to seize certain intellectual property comprising the Debtor's assets to satisfy a $81,958.72 judgment owed to A4A that had been entered on September 20, 2018. (Mot. at Ex. No. 1.) In the Seizure Order, Judge Lenard adopted the Report and Recommendations on Defendants' Amended Motion for Order of Seizure and Sale (the "Report and Recommendations") made by Magistrate Judge Jonathan Goodman on June 14, 2021. In his Report and Recommendations, Magistrate Judge Goodman made two findings of particular significance to A4A's motion to dismiss: First, he found that the Debtor had "spent . . . two years claiming to be in search of counsel, attempting to relitigate previously-decided issues, and ignoring court orders and deadlines." (Mot. Ex. 2 at p. 23.) Second, he referenced the fact that he had previously found that the Debtor was the alter ego of its principal, Phillip Bleicher. (*Id.* at p. 10.) Neither Bleicher nor the Debtor contested either recommended finding when the Report and Recommendations were presented to Judge Lenard for adoption.

A4A filed the instant motion to dismiss this case on September 13, 2021. (Dkt. No. 38.) Although the parties fully briefed the motion, neither party requested an evidentiary hearing on any of the factual issues raised in the motion. Because "the parties have otherwise placed the relevant facts before the court [and] the court by virtue of having presided over the case is already familiar with those facts, a formal, evidentiary hearing on

---

[3] A4A provided limited background information in its motion. As a result, the Court was required to carefully review the three exhibits attached to the motion in order to glean most of the litigation history between the Debtor and A4A.

the motion to dismiss . . . the bankruptcy is not necessary." *In re Bartle*, 560 F.3d 724, 729 (7th Cir. 2009).

### *Has A4A Met Its Burden of Establishing that the Debtor's Chapter 11 Case Was Filed in Bad Faith?*

The bankruptcy court has broad discretion to dismiss a Chapter 11 case for "cause" under 11 U.S.C. § 1112(b). *In re Woodbrook Assocs.,* 19 F.3d 312, 316 (7th Cir. 1994). Good faith is recognized as a "threshold prerequisite" to filing a bankruptcy case under Chapter 11, *In re Madison Hotel Assocs.,* 749 F.2d 410, 426 (7th Cir. 1984), even though not specifically provided for under Section 1112(b), *In re Local Union 722 Int'l Bhd. of Teamsters*, 414 B.R. 443, 448 (Bankr. N.D. Ill. 2009). *See also Fruehauf Corp. v. Jartran, Inc. (In re Jartran)*, 886 F.2d 859, 867 (7th Cir. 1989) (stating that "courts have sensibly considered [the uncodified ground of] bad faith to be an acceptable basis for conversion or dismissal"). Indeed, lack of good faith constitutes "cause" sufficient for dismissal. *Madison Hotel,* 749 F.2d at 426.

In determining whether the Debtor lacked the good faith necessary to seek bankruptcy relief, the Court must examine the totality of the circumstances. *In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009). Courts have typically considered the following fourteen factors in conducting this analysis: (1) Did the debtor have few or no unsecured creditors; (2) Had the debtor or a related entity filed a previous bankruptcy petition; (3) Had the debtor engaged in improper pre-petition conduct; (4) Did the petition allow the debtor to evade court orders; (5) Are there few debts to those creditors not moving for dismissal; (6) Was the petition filed on the eve of foreclosure: (7) If so, was the foreclosed property the sole or major asset of the debtor; (8) Did the debtor have an ongoing business or employees; (9) Is there is no possibility of reorganization; (10) Is the debtor's income insufficient to operate; (11) Is there any pressure to dismiss the case from non-moving creditors; (12) Does the debtor's reorganization essentially involve the resolution of a two-party dispute; (13) If the debtor is a corporation, was the debtor formed and did it receive title to its major assets immediately before the petition; and (14) Did the debtor file the Chapter 11 case solely to invoke the automatic stay. *Id.*

A4A argues that the Debtor's bad faith in filing this case is demonstrated mainly by its "years-long pre-filing dilatory tactics" in the Florida litigation between the parties. (Mot. at ¶ 12.) A4A's evidence of this conduct is the following findings from the Report and Recommendations of Magistrate Judge Goodman: The Debtor "spent . . . two years claiming to be in search of counsel, attempting to relitigate previously-decided issues, and ignoring court orders and deadlines" and "has gone to great lengths to avoid paying the court-ordered judgment and to delay these proceedings." (Mot. Ex. 2 at pp. 23 & 26.) In the view of A4A, the Debtor's filing of this bankruptcy petition is just "another step in that course of conduct." (Mot. at ¶ 10.)

This Court accepts the Florida court's findings and conclusions that the Debtor engaged in dilatory conduct in that lawsuit. Principles of comity and collateral estoppel require no less. The question for this Court is whether that conclusion alone is sufficient to justify dismissal of this bankruptcy case as having been filed in bad faith.

Certainly, while filing a bankruptcy petition on the eve of foreclosure may be a factor in the good-faith determination, the mere fact that the Debtor filed this case on the eve of enforcement of the Seizure Order entered by the Florida federal court does not inherently render the Debtor's bankruptcy case a bad faith filing. *See In re Lake Mich. Beach Pottawattamie Resort LLC*, 547 B.R. 899, 907 (N.D. Ill. 2016) (filing on the eve of a foreclosure sale does not establish a bad faith filing); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000) (same); *In re PEM Thistle Landing TIC 23, LLC*, No. 13-13273(KG), 2014 WL 1319183 at, *3 (Bankr. D.Del. Apr. 2, 2014) (same).

But to be fair to A4A, that does not appear to be what it is arguing. Instead, it is arguing that the Debtor's bankruptcy filing was not brought for proper bankruptcy purposes but was instead brought simply to waste more time and cause more delay, as it had done in the Florida litigation.

It is unquestionably true that a debtor's prepetition bad-faith conduct is a factor that the Court can and should consider in deciding whether to dismiss a bankruptcy case. However, it is just one of over a dozen factors that the Court should consider in making that determination. None of the cases cited by A4A relied on a debtor's bad-faith prepetition conduct as the sole ground for dismissing the bankruptcy case. Each of those cases relied on numerous factors, including, but not limited to, bad-faith prepetition conduct to justify dismissal.

Moreover, neither party requested an evidentiary hearing to establish the Debtor's purpose and intent in filing the case. As a result, the Court must make that determination by examining the Debtor's conduct in this case in addition to its prepetition behavior in the Florida litigation. What does that examination reveal?

First, it reveals that, at least in this Court, the Debtor has not been dilatory and has not ignored the requirements which the Bankruptcy Code and Rules place upon it: The Debtor filed its initial plan of reorganization on October 8, 2021 and then filed an amended plan on December 13, 2021 (Dkt. Nos. 53 & 77). The Debtor has also filed all of the documents required by the Bankruptcy Code and Rules. While the Court cannot rule out the possibility that the Debtor filed this case for the sole purpose of avoiding or delaying the Seizure Order, A4A did not ask for an evidentiary hearing to prove that fact and its reference to the Florida federal courts' Report and Recommendations and Seizure Order does not establish that fact. While the determinations regarding the Debtor's conduct in that litigation are certainly binding upon the Debtor, neither Magistrate Judge Goodman

nor District Judge Lenard ever addressed whether the Debtor's filing of and conduct in this bankruptcy case have been in bad faith.

Second, both the initial plan and the amended plan provide for payment in full to all creditors, including A4A. (*Id.*) Unless it is obvious that there is no reasonable possibility that the plan is feasible,[4] then filing a 100% plan is at least some evidence that the Debtor filed its bankruptcy case to give it a "breathing spell" to accomplish an efficient and orderly reorganization and not to unreasonably deter and frustrate the rights of A4A. *See In re Bovino*, 496 B.R. 492, 507 (Bankr. N.D. Ill. 2013).

Third, this is not a two-party dispute. There are other creditors with significant claims, including the IRS. If the Debtor's 100% plan does prove to be feasible, then dismissal at this juncture would ill serve the other creditors.

"In determining whether a petition has been filed in bad-faith, the court is primarily concerned with the underlying question of whether reorganization is the proper course of action in a particular . . . case." *In re 801 S. Wells St. Ltd. P'ship*, 192 B.R. 718, 727 (Bankr. N.D. Ill. 1996) (internal quotation omitted). "[T]he Court must be careful not to deny the protection of the Bankruptcy Code to a debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith." *In re Strug-Div., LLC*, 375 B.R. 445, 449 (Bankr. N.D. Ill. 2007).

In short, the Court is not convinced that A4A has yet met its burden of establishing that the Debtor filed this case in bad faith, notwithstanding the Debtor's dilatory conduct in the Florida federal litigation. That conclusion could certainly change if it becomes apparent that the Debtor's plan is not feasible or if the Debtor starts to engage in the type of dilatory behavior it displayed in the Florida litigation. Because events proceed more rapidly in a Subchapter V case than in a regular Chapter 11 case, it will not take long for evidence regarding those issues to appear, one way or the other. But at least at this early stage of the bankruptcy proceedings, the Court finds that A4A has not met its burden of establishing by a preponderance of the evidence that cause exists to dismiss this case. *See In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011).

### *Has A4A Met its Burden of Establishing that the Debtor is Ineligible to File a Bankruptcy Case?*

A4A also argues that this case should be dismissed because the Debtor is not eligible to file a Chapter 11 petition, notwithstanding that the Debtor registered as a corporation in the State of Illinois and indicated that it was an S-corporation on its petition.

---

[4] As previously noted, it is premature at this stage of the case to determine whether the Debtor's plan is feasible.

(Mot. at ¶ 15 & Dkt. Nos. 1 & 47 at ¶ 4.)  The factual basis for A4A's argument is a finding recommended by the Florida Magistrate Judge and adopted by the District Judge that the Debtor's president, Phillip Bleicher, is the alter ego of the Debtor.  A4A argues that this factual finding, binding upon this Court through collateral estoppel, makes the Debtor a sole proprietorship under Illinois law, and therefore ineligible for Chapter 11 relief.[5]

A4A points to the Report and Recommendations of Magistrate Judge Goodman, which were made on A4A's motion for an order of seizure and sale of the Debtor's assets in order to satisfy the judgment entered in favor of A4A.  In the Report and Recommendations, Magistrate Judge Goodman noted that a Motion for Proceedings Supplementary and to Implead Phillip Bleicher had been granted by Judge Lenard, in part, "on the argument that he is an 'alter ego' of Flava Works, Inc.  [ECF No. 190, pp. 5-6]."  (Mot. at Ex. No. 2, p. 2 fn. 2.)  On the other hand, Magistrate Judge Goodman also made the following recommended findings:

> Flava Works, Inc. is a corporation.  Process against a corporation may be served "[o]n the president or vice president, or other head of the corporation."  § 48.081(1)(a).  Phillip Bleicher, in front of the Undersigned, has held himself out as "the CEO of Flava Works." [ECF No. 123].  Further, Flava Works, Inc. has previously filed motions "by and through its Owner and CEO, Phillip Bleicher. . . ." [ECF Nos. 25; 184].  *This Court has also already made a finding that Phillip Bleicher is the "alter ego" of Flava Works, Inc.*  It is indisputable that Phillip Bleicher qualifies as a "head of the corporation."

(*Id.* pp. 9-10) (emphasis added).

A4A did not provide this Court with any other documents from the Florida litigation between it and the Debtor.  The failure to provide this Court with a fuller record of the

---

[5] The Bankruptcy Code clearly defines who may be a debtor in Section 109.  Under that section, any "person" who may be a debtor under Chapter 7 may also be a debtor under Chapter 11.  11 U.S.C. § 109(d).  A "person" is defined to include individuals, partnerships, and corporations, with certain exceptions not applicable here.  11 U.S.C. § 101(41).  In order to be eligible to file a Chapter 11 case, such "person" must also reside or have a "domicile, a place of business, or property in the United States. . . ."  11 U.S.C. § 109(a).

Courts have held that a sole proprietorship is not a "person" for purposes of the Bankruptcy Code because it is neither an individual, nor a partnership, nor a corporation. *See Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 717 (9th Cir. BAP 2004).  Because it is not a "person," a sole proprietorship is ineligible to be a debtor in bankruptcy. *Id.*; *In re CA Fin. Sols.*, No. 19-00676 (RJF), 2019 WL 2869566, at *6 (Bankr. D. Haw. July 1, 2019); *In re Know Thy Self, Inc.*, No. 06-62628, 2006 WL 6589908, at *3 (Bankr. N.D. Ga. Mar. 17, 2006); *In re Christenberry*, 336 B.R. 353, 356 (Bankr. E.D. Tenn. 2005); *In re T.W. Koeger Trucking Co.*, 105 B.R. 512, 515 (Bankr. E.D. Mo. 1989).

findings and conclusions from that court regarding its alter ego finding fatally undermines A4A's argument that the Debtor is not eligible to file a Chapter 11 petition.

Collateral estoppel or issue preclusion prevents a party from relitigating issues that were resolved in a prior action. *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019). The party invoking the doctrine must demonstrate that "(1) the issue sought to be precluded [was] the same as that involved in the prior litigation, (2) the issue [was] actually litigated, (3) the determination of the issue [was] essential to the final judgment, and (4) the party against whom estoppel is invoked [was] fully represented in the prior action." *Id.* (quoting *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011)).

In order to determine whether the Florida federal court litigation involved the same issue before this Court, the first step is to "determine with precision what matters actually were decided" in the prior litigation. *Calvert,* 913 F.3d at 701 (internal quotation omitted). That determination is grounded in the actual findings and analysis of the Florida federal court. *See id.*

Based on the record submitted by A4A, it is unclear whether the determination that Phillip Bleicher was the alter ego of the Debtor was essential to the final judgment entered by the Florida federal court on September 20, 2018. A4A has only submitted a post-judgment Report and Recommendations regarding an order for seizure and sale of assets. That document merely references a prior finding that Phillip Bleicher had previously been found to be the alter ego of the Debtor and therefore "head of the corporation." (Mot. at Ex. No. 2, p. 10.) However, none of the Florida court's findings with respect to the entry of the final judgment against the Debtor has been provided to this Court. Absent an adequate showing of what evidence was submitted to the Florida court and the detailed findings of fact and conclusions of law from that proceeding, the doctrine of collateral estoppel is not properly applied here. That is because detailed findings of fact from the earlier proceeding are necessary to enable this Court to determine which facts were actually proven, which issues were decided, and what was essential to the Florida court's judgment.

In short, this Court cannot assess the applicability of issue preclusion without a more precise record of what was actually decided by the Florida federal court. Thus, A4A has not met its burden to establish that the prior litigation involved the same issue or that such issue was essential to the final judgment entered by the Florida federal court.[6]

However, even if the Court were to accept without more the argument that collateral estoppel requires the Court to find that Phillip Bleicher is the alter ego of the Debtor, that

---

[6] Because the Court has found that the first and third elements of issue preclusion have not been met, it need not discuss the remaining two elements.

would not end the analysis. The Court is not convinced that A4A is correct in arguing that a finding that Phillip Bleicher is the alter ego of the Debtor means that the Debtor is automatically transformed from a corporation to a sole proprietorship. The three cases cited by A4A do not stand for this proposition and therefore are not persuasive.

For example, in *Vernon v. Schuster*, 688 N.E.2d 1172 (Ill. 1997), the Illinois Supreme Court did not even discuss the alter ego doctrine. Rather, the issue presented was whether an individual succeeded to the liability of a predecessor sole proprietorship for breach of contract and breach of warranty claims. *Id.* at 1173. The court addressed the rule of successor corporate nonliability and the four exceptions to that general rule. *Id.* at 1175-76.

Similarly, the court in *Phipps v. Peoples Nat'l Bank, NA (In re Phipps)*, Bankr. No. 08-40685, Adv. Nos. 08-4077, 08-4078, 2008 WL 5606175 (Bankr. S.D. Ill. Dec. 10, 2008) never mentioned the alter ego doctrine. Instead, the bankruptcy court was asked to determine whether a creditor's security interest attached to all equipment of a debtor's businesses or whether it was limited to the business equipment that was purchased with the loan proceeds. *Id.* at *1. The court based its decision not on alter ego grounds, but rather on the provisions of the Illinois Uniform Commercial Code and, in particular, the issue of sufficiency of collateral descriptions in security agreements. *Id.* at * 2-6.

Finally, the court in *Sullivan v. Cozzi*, No. 95 C 3227, 1997 WL 392248 (N.D. Ill. July 8, 1997) did address the alter ego doctrine, but in a manner utterly inconsistent with the factual situation presented in the case at bar. In *Cozzi*, District Judge Shadur was faced with the issue of whether a newly formed corporation was liable for an arbitration award previously entered against its previous incarnation as a sole proprietorship. Specifically, John Cozzi had previously been doing business as Cozzi & Son Plumbing Co., a sole proprietorship. Soon after an arbitration award was entered against him, Cozzi ceased doing business under that name and began doing business through a new corporate entity, F & D Industries, Inc. *Id.* at *1. Plaintiff argued that the incorporation of F & D was a sham transaction designed to avoid the arbitrator's award, arguing that F & D was merely the alter ego of Cozzi & Son. Judge Shadur agreed, noting that when F & D was formed, the principals retained the same assets, employees, and location as the previous business. *Id.* at *1. With few exceptions, the court noted that the newly formed corporation was a "carbon copy" of the earlier sole proprietorship, and therefore liable for the judgment. *Id.* at *3.

The *Cozzi* case can therefore easily be distinguished from the matter at hand. Here, the Court has no facts to suggest that Phillip Bleicher engaged in a sham transaction when he formed the Debtor as a corporation. None of Judge Shadur's grounds for finding an

alter ego relationship apply to the facts of this case. But even if the Court were to apply Judge Shadur's reasoning in the *Cozzi* case, the result of finding that Phillip Bleicher was the alter ego of the Debtor would not be to conclude that the Debtor was a sole proprietorship; it would be to conclude that the Debtor should be treated as an individual—Phillip Bleicher. Because an individual can file a bankruptcy petition, A4A's argument fails even if the Court applies Judge Shadur's analysis to this matter.

There are additional reasons why A4A's "sole proprietorship" argument fails. Generally, courts use an alter ego theory as a means of "piercing the corporate veil" for liability purposes. *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 572 (7th Cir. 2021). That is, the main change effected by an alter ego finding is to broaden the target of a corporation's creditors to the principals of that corporation. Determination that a principal of a corporation is the alter ego of that corporation changes the relationship of the principal to the corporation's creditors. *See Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emps. & Bartenders Int'l Union*, 417 U.S. 249, 259 n.5 (1974) (explaining that alter ego allegations assert that one entity "is in reality the same employer and is subject to all the legal and contractual obligations of" the other entity); *Peetoom v. Swanson*, 778 N.E.2d 291, 295 (Ill. App. Ct. 2002) (stating that "[t]his doctrine fastens liability on the individual or entity that uses a corporation merely as an instrumentality to conduct that person's or entity's business.").

In addition, Magistrate Judge Goodman's Report and Recommendations recognized that his alter-ego finding did not transform the Debtor into a sole proprietorship when he stated that the Debtor "is a corporation" and took care to specify that all of the rules requiring proper service of process upon corporations had been met. (Mot. Ex. No. 2 at p. 9.)

For the foregoing reasons, the Court denies A4A's motion to dismiss the Debtor's case based on the arguments that this case was not filed in good faith and that the Debtor is not eligible to file a bankruptcy case because it is in fact a sole proprietorship.

**ENTERED:**

**DATE: January 10, 2022**

*Donald R. Cassling*

**Donald R. Cassling**
**United States Bankruptcy Judge**